## Nos. 14-1032, 14-1064

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**CHILDREN'S HOSPITAL AND RESEARCH CENTER OF OAKLAND, INC., d/b/a CHILDREN'S HOSPITAL OF OAKLAND**

**Petitioner**

**v.**

**NATIONAL LABOR RELATIONS BOARD**

**Respondent**

**and**

**SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WORKERS-WEST**

**Intervenor for Respondent**

_____

**ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD**

_____

**BRIEF FOR
THE NATIONAL LABOR RELATIONS BOARD**

_____

**RUTH E. BURDICK**
*Deputy Assistant General Counsel*

**JOEL A. HELLER**
*Attorney*

*National Labor Relations Board*
**1099 14th Street, NW**
**Washington, DC 20570**
**(202) 273-7958**
**(202) 273-1042**

**RICHARD F. GRIFFIN, JR.**
*General Counsel*
**JENNIFER ABRUZZO**
*Deputy General Counsel*
**JOHN H. FERGUSON**
*Associate General Counsel*
**LINDA DREEBEN**
*Deputy Associate General Counsel*

*National Labor Relations Board*

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| CHILDREN'S HOSPITAL AND RESEARCH CENTER OF OAKLAND, INC., d/b/a CHILDREN'S HOSPITAL OF OAKLAND | : : : | |
| | : | |
| Petitioner | : | Nos. 14-1032; 14-1064 |
| | : | |
| v. | : | |
| | : | |
| NATIONAL LABOR RELATIONS BOARD | : | |
| | : | Board Case No. |
| Respondent | : | 32-CA-086106 |
| | : | |
| and | : | |
| | : | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WORKERS-WEST | : : : | |
| Intervenor for Respondent | : | |

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to Circuit Rule 28(a)(1), counsel for the National Labor Relations Board ("the Board") certifies the following:

### A.    Parties and Amici

Children's Hospital and Research Center of Oakland, Inc., d/b/a Children's Hospital of Oakland ("the Hospital"), is petitioner before the Court and was respondent before the Board. The Board is respondent before the Court; its General Counsel was a party before the Board. The Service Employees International Union, United Healthcare Workers-West is an intervenor before the

Court on behalf of the Board, and was the charging party before the Board.  There are no amici.

### B.    Rulings Under Review

This case is before the Court on the Hospital's petition to review a Board Order issued on February 28, 2014, and reported at 360 NLRB No. 56.  The Board seeks enforcement of that Order against the Hospital.

### C.    Related Cases

The case on review was not previously before this Court and or any other court.  Board Counsel is unaware of any related cases pending in this Court or any other court.

/s/Linda Dreeben
Linda Dreeben
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1099 14th Street NW
Washington, DC 20570-0001
(202) 273-2960

Dated at Washington, DC
this 23rd day of July, 2014

# **TABLE OF CONTENTS**

**Headings**                                                                                       **Page(s)**

Statement of jurisdiction .............................................................................1

Statement of the issue .................................................................................2

Relevant statutory provisions.....................................................................2

Statement of the case..................................................................................3

I.  Procedural History ................................................................................3

II. The Board's Findings of Fact...............................................................3

    A. The collective-bargaining agreement between SEIU and the Hospital
       provides for the arbitration of grievances ....................................................3

    B. SEIU files grievances on behalf of Yolanda Montoya, five Respiratory
       Therapists, and Sharon Brown ..................................................................4

    C. An election is held; SEIU requests arbitration; after a new collective-
       bargaining representative is certified, and SEIU is decertified, the
       Hospital refuses to arbitrate the grievances ..............................................5

III. The Board's Conclusions and Order....................................................6

Standard of Review.....................................................................................6

Summary of the Argument..........................................................................7

Argument......................................................................................................9

The Board's finding that the Hospital violated Section 8(a)(5) and (1) of the
Act by refusing to arbitrate three grievances that arose under its collective-
bargaining agreement with SEIU is supported by substantial evidence.................9

A. An employer's duty to arbitrate grievances that arise under a collective-bargaining agreement is a longstanding tenet of labor law, and that duty survives union decertification ................................9

B. The Board's finding is supported by substantial evidence.......................12

C. The Board's finding is consistent with well-established principles and labor policies ........................................................................................13

1. The Board's finding follows logically from precedent and is consistent with the Act's exclusive-representation principle ........13

2. The Board's finding ensures that the three pending grievances will be heard........................................................................................20

D. The Hospital's retroactivity argument is jurisdictionally barred .............22

Conclusion ......................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*\*Antioch Bldg. Materials Co.*,
  316 NLRB 647 (1995) ............................................................. 10, 11, 13, 14, 23

*\*Arizona Portland Cement Co.*,
  302 NLRB 36 (1991) ........................................ 11, 12, 14, 15, 18, 20, 23

*AT&T Technologies, Inc. v. Communications Workers of America*,
  475 U.S. 643 (1986) ....................................................................... 10

*Children's Hospital & Research Center Oakland, Inc. v. SEIU*,
  2012 WL 4891594 (N.D. Cal. Oct. 12, 2012) ........................... 6, 18, 19

*Dist. Lodge 64, Int'l Ass'n of Machinists v. NLRB*,
  949 F.2d 441 (D.C. Cir. 1991) ........................................................ 23

*Exxon Chem. Co. v. NLRB*,
  386 F.3d 1160 (D.C. Cir. 2004) ...................................................... 11

*Federation of Union Representatives v. Unite Here*,
  736 F. Supp. 2d 790 (S.D.N.Y. 2010) ......................................... 18, 19

*Field Bridge Assocs.*, 306 NLRB 322 (1992)…………………………………… 18

*Glendale Manufacturing Co. v. Local No. 520, ILGWU*,
  283 F.2d 936 (4th Cir. 1960) ....................................................... 17, 18

*Hosp. Employees, Local 1273 v. Deaton Hosp. & Med. Ctr. of Christ Lutheran Church*,
  671 F. Supp. 1049 (D. Md. 1986) .................................................... 11

*\*Indiana & Michigan Elec. Co.*,
  284 NLRB 53 (1987) ................................................................. 10, 13

*John Wiley & Sons, Inc. v. Livingston*,
  376 U.S. 543 (1964) ............................................................. 9, 10, 15

_____

[*] Authorities upon which we chiefly rely are marked with asterisks.

<u>**TABLE OF AUTHORITIES**</u>

**Cases-Cont'd**                                                          **Page(s)**

*Local 13, Detroit Newspaper Printing & Graphic Communications Union v. NLRB*,
   598 F.2d 267 (D.C. Cir. 1979)........................................................................7, 23

*Local 888, AFGE (Bayley-Seton Hospital)*,
   323 NLRB 717 (1997) ........................................... 12, 18, 20, 21, 22, 23

*McGuire v. Humble Oil & Refining Co.*,
   355 F.2d 352 (2d Cir. 1966) ...............................................................17

*Missouri Portland Cement Co.*,
   291 NLRB 1043 (1988) ........................................... 10, 11, 13, 14, 23

*New York & Presbyterian Hosp. v. NLRB*,
   649 F.3d 723 (D.C. Cir. 2011)............................................................22

*Nolde Bros., Inc. v. Bakery Workers Local 358*,
   430 U.S. 243 (1977)................................................... 10, 13, 21

*Quinn v. Police Officers Labor Council*,
   572 N.W. 2d 641 (Mich. 1998)..........................................................20

*Republic Steel Corp. v. Maddox*,
   379 U.S. 650 (1965).........................................................................21

*Serv. Corp. Int'l v. NLRB*,
   495 F.3d 681 (D.C. Cir. 2007)...........................................................7

*Sheet Metal Workers International Association, Local No. 162 v. Jason Manufacturing, Inc.*,
   900 F.2d 1392 (9th Cir. 1990) ..................................................... 17, 18

*Small v. Frank*,
   1996 WL 50658 (E.D. Pa. Feb. 5, 1996) ...........................................19

_____

[*] Authorities upon which we chiefly rely are marked with asterisks.

# TABLE OF AUTHORITIES

**Cases-Cont'd**                                                                **Page(s)**

*U.S. Gypsum Co. v. United Steelworkers of America*,
384 F.2d 38 (5th Cir. 1967) .............................................................. 11, 12, 14, 20

*U.S. Testing Co. v. NLRB*,
160 F.3d 14 (D.C. Cir. 1998) ................................................................................ 6

*UAW Local 1369 v. Telex Computer Prods., Inc.*,
816 F.2d 519 (10th Cir. 1987) ............................................... 10, 12, 14, 15, 18, 20

*UAW v. NLRB*,
455 F.2d 1357 (D.C. Cir. 1971) ....................................................................... 7, 19

*UFCW, Local No. 150-A v. NLRB*,
1 F.3d 24 (D.C. Cir. 1993) ................................................................................. 23

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*,
363 U.S. 593 (1960) ............................................................................................ 9

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) ........................................................................................ 9, 10

*Woelke & Romero Framing, Inc. v. NLRB*,
456 U.S. 645 (1982) .......................................................................................... 22

_____

[*] Authorities upon which we chiefly rely are marked with asterisks.

**Statutes**                                                          **Page(s)**

National Labor Relations Act, as amended
  (29 U.S.C. § 151 et seq.)

Section 7 (29 U.S.C. § 157) ...................................................................................11
Section 8(a)(1) (29 U.S.C. § 158(a)(1))................................................. 3,6,7,9,11,12
Section 8(a)(5) (29 U.S.C. § 158(a)(5))..................................... 2,3,6,7,9,10,11,12,22
Section 10(a) (29 U.S.C. § 160(a)) ............................................................................2
Section 10(b) (29 U.S.C. § 160(b))...........................................................................21
Section 10(e) (29 U.S.C. § 160(e)) ................................................................... 2,8,22
Section 10(f) (29 U.S.C. § 160(f)) ............................................................................2

**Other Authorities**                                                **Page(s)**

18A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d §
  4458.1 (2d ed. 2002) …………………………………………………….. 18

## GLOSSARY

| | |
|---|---|
| Act | National Labor Relations Act |
| Board | National Labor Relations Board |
| Hospital | Children's Hospital and Research Center of Oakland, Inc., d/b/a Children's Hospital of Oakland |
| NUHW | National Union of Healthcare Workers |
| SEIU | Service Employees International Union, United Healthcare Workers-West |

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

## Nos. 14-1032, 14-1064

———————————

## CHILDREN'S HOSPITAL AND RESEARCH CENTER OF OAKLAND, INC., d/b/a CHILDREN'S HOSPITAL OF OAKLAND

**Petitioner**

**v.**

## NATIONAL LABOR RELATIONS BOARD

**Respondent**

**and**

## SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WORKERS-WEST

**Intervenor for Respondent**

———————————

## ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

———————————

## BRIEF FOR THE NATIONAL LABOR RELATIONS BOARD

———————————

## STATEMENT OF JURISDICTION

This case is before the Court on the petition of Children's Hospital and

Research Center of Oakland, Inc., d/b/a Children's Hospital of Oakland ("the

Hospital") to review, and on the cross-application of the National Labor Relations Board ("the Board") to enforce, a Board Order issued on February 28, 2014, and reported at 360 NLRB No. 56. The Board had jurisdiction over the proceeding below pursuant to Section 10(a) of the National Labor Relations Act ("the Act"). 29 U.S.C. § 160(a).

The Court has jurisdiction over this proceeding pursuant to Section 10(e) and (f) of the Act, 29 U.S.C. § 160(e) and (f), which provide that petitions for review of Board orders may be filed in this Court and allow the Board, in that circumstance, to cross-apply for enforcement. The Hospital filed its petition on March 10, 2014, and the Board filed its cross-application on April 24, 2014. Both filings were timely, because the Act places no limit on the time for such filings. The Service Employees International Union, United Healthcare Workers-West ("SEIU") has intervened on behalf of the Board.

## STATEMENT OF THE ISSUE

Whether the Board's finding that the Hospital violated Section 8(a)(5) and (1) of the Act by refusing to arbitrate three grievances that arose under its collective-bargaining agreement with SEIU is supported by substantial evidence.

## RELEVANT STATUTORY PROVISIONS

All applicable statutory provisions are reproduced in the Addendum to the Hospital's opening brief.

2

## STATEMENT OF THE CASE

## I.    PROCEDURAL HISTORY

Acting on an unfair-labor-practice charge filed by SEIU, the Board's Acting

General Counsel issued a complaint alleging that the Hospital unlawfully

repudiated its contract in violation of Section 8(a)(5) and (1) of the Act, 29 U.S.C.

§ 158(a)(5) and (1), by refusing to arbitrate three pending grievances with SEIU.

The case was submitted to an administrative law judge on a stipulated record, and

the judge issued a decision and recommended order finding a violation as alleged.

The Hospital filed exceptions to the judge's decision.  On review, the Board

affirmed the judge's findings and conclusions and adopted the judge's

recommended order.

## II.    THE BOARD'S FINDINGS OF FACT

### A.    The Collective-Bargaining Agreement Between SEIU and the Hospital Provides for the Arbitration of Grievances

SEIU formerly represented a unit of service, maintenance, and technical

employees at the Hospital, a pediatric hospital and research center in Oakland,

California.  (D&O 2; JSSF ¶¶ 1, 4.)[1]  The most recent collective-bargaining

---

[1] Record references in this proof brief are to the Board's Decision and Order, 360 NLRB No. 56 ("D&O"), the parties' Joint Statement of Stipulated Facts ("JSSF"), the Joint Exhibits ("JX"), and the Hospital's Exceptions to the administrative law judge's decision ("Hosp. Excs.").  "Br." cites are to the Hospital's opening brief to the Court.  References preceding a semicolon are to the Board's findings; cites following a semicolon are to supporting evidence in the record.

3

agreement between the Hospital and SEIU, which was to be in effect from

December 8, 2010, to April 30, 2014, contained a two-step grievance process.

Under the contract, if a grievance remains unresolved after those two steps, either

party may request arbitration.  (D&O 2; JSSF ¶¶ 6-8; JX 1 at 63-64.)

### B. SEIU Files Grievances on Behalf of Yolanda Montoya, Five Respiratory Therapists, and Sharon Brown

In April 2011, the Hospital awarded a full-time position to Yolanda

Montoya, who was working as a part-time patient-care assistant.  The Hospital

subsequently rescinded the offer when it discovered that the position should have

gone to a more senior employee under the collective-bargaining agreement's

seniority provisions.  Six months later, Montoya received the next available full-

time position.  SEIU filed a grievance on behalf of Montoya, seeking backpay for

the period between when she would have started the first full-time position and

when she actually started her new position.  (D&O 3; JSSF ¶¶ 22-26.)

In September or October 2011, SEIU filed a grievance on behalf of five

respiratory therapists who alleged that they should have been paid at a higher step

level under the contract.  The parties resolved three of the claims, but the Hospital

contended that the remaining two therapists were not entitled to higher pay before

they began training for transport duty.  The Hospital began paying them the

transport-pay differential when they began training, but SEIU alleged that the two

therapists were owed additional lost wages.  (D&O 3; JSSF ¶¶ 27-31.)

4

In April 2012, the Hospital fired Sharon Brown, contending that she had

failed to comply with the terms of a last-chance agreement.  SEIU filed a grievance

over her discharge.  Brown and SEIU subsequently filed unfair-labor-practice

charges with the Board regarding Brown's discharge, but the Board dismissed both

charges.  (D&O 2-3; JSSF ¶¶ 15-21.)

### C.    An Election Is Held; SEIU Requests Arbitration; After a New Collective-Bargaining Representative Is Certified, and SEIU Is Decertified, the Hospital Refuses To Arbitrate the Grievances

After receiving a petition from the National Union of Healthcare Workers

("NUHW") to represent the Hospital employees then represented by SEIU, the

Board conducted a representation election on May 16, 2012.  (D&O 2; JSSF ¶¶ 10-

12.)  NUHW won the election.  (D&O 2; JSSF ¶ 12.)  On May 23, SEIU wrote to

the Hospital's labor-relations manager and requested arbitration of the Montoya,

Brown, and Respiratory Therapist grievances in accordance with the collective-

bargaining agreement.  (D&O 3; JSSF ¶¶ 32-33.)  On May 24, the Board certified

NUHW as the bargaining representative for the Hospital's employees and

decertified SEIU.  (D&O 2; JSSF ¶¶ 13-14.)  On July 16, the Hospital refused to

arbitrate with SEIU, citing SEIU's decertification and replacement.  (D&O 3; JSSF

¶ 35.)

On July 24, the Hospital filed suit in the United States District Court for the

Northern District of California, seeking a declaratory judgment that SEIU could

5

not compel it to arbitrate the three pending grievances and an injunction

prohibiting SEIU from requesting such arbitration.  (D&O 3; JSSF ¶¶ 40-41.)

SEIU filed a cross-petition to compel arbitration under the Federal Arbitration Act.

(D&O 3; JSSF ¶ 43.)  On October 12, the district court denied SEIU's motion to

compel and, in light of that ruling, denied the Hospital's motions as moot.

*Children's Hosp. & Research Ctr. Oakland, Inc. v. SEIU*, 2012 WL 4891594 (N.D.

Cal. Oct. 12, 2012).  Neither party appealed.  (D&O 3; JSSF ¶ 47.)

## III.   THE BOARD'S CONCLUSIONS AND ORDER

On February 28, 2014, the Board (Members Miscimarra, Johnson, and

Schiffer) found, in agreement with the administrative law judge, that the Hospital

violated Section 8(a)(5) and (1) of the Act by refusing to arbitrate with SEIU over

the three pending grievances.  (D&O 1.)  The Board's Order directs the Hospital to

cease and desist from the unfair labor practices found.  (D&O 4.)  Affirmatively,

the Board's Order requires the Hospital to comply with SEIU's May 23, 2012

request to arbitrate the grievances under the terms of the collective-bargaining

agreement, and to post a remedial notice.  (D&O 4.)

## STANDARD OF REVIEW

The Court "applies the familiar substantial evidence test to the Board's

findings of fact and application of law to the facts," *U.S. Testing Co. v. NLRB*, 160

F.3d 14, 19 (D.C. Cir. 1998), and will enforce a Board order if "it is supported by

substantial evidence and is consistent with the Board's own precedent," *Serv. Corp. Int'l v. NLRB*, 495 F.3d 681, 683 (D.C. Cir. 2007). Moreover, the Court "pay[s] great deference to the Board's decision" in cases involving "specific application of a broad statutory standard to the particular facts of the case." *Local 13, Detroit Newspaper Printing & Graphic Communications Union v. NLRB*, 598 F.2d 267, 272 (D.C. Cir. 1979). Similarly, the Court will "not lightly disregard the expertise of the NLRB as the agency with the knowledge and ability to deal with this specialized field." *UAW v. NLRB*, 455 F.2d 1357, 1364-65 (D.C. Cir. 1971).

## SUMMARY OF THE ARGUMENT

The Board's finding that the Hospital violated Section 8(a)(5) and (1) of the Act by refusing to arbitrate three grievances that arose under its collective-bargaining agreement with SEIU is supported by substantial evidence and its Order should be enforced in full. The grievances at issue arose under the collective-bargaining agreement between the Hospital and SEIU prior to SEIU's decertification, and the Hospital was bound by the contract's provision permitting either party to select arbitration to resolve grievances. SEIU invoked that provision prior to its decertification, and the Hospital's refusal to arbitrate was a violation of the Act.

In finding that violation, the Board applied well-settled principles regarding an employer's duty to arbitrate grievances under the terms of agreed-upon

arbitration procedures, and its decision follows logically from and is consistent with the Board's own precedent.  The Board's finding served to ensure that the employees will not go without a resolution of their grievances or lose the benefit of their bargain with the Hospital.

The Hospital's contention that the Board's decision is inconsistent with the Act's exclusive-representation principle is contrary to well-established precedent that at times an employer must arbitrate with a union that no longer represents a majority of its employees.  Moreover, arbitration of three discrete, individualized grievances on matters that will have no prospective impact on subsequent terms and conditions of employment will not interfere with the bargaining relationship between the Hospital and the newly certified NUHW.  The cases on which the Hospital relies are distinguishable and do not mandate a different result.

Finally, the Hospital's retroactivity argument, including its assertion that the Board's decision constitutes a new rule of law, is jurisdictionally barred from review under Section 10(e) of the Act because the Hospital failed to raise it before the Board.

8

**ARGUMENT**

**THE BOARD'S FINDING THAT THE HOSPITAL VIOLATED SECTION 8(a)(5) AND (1) OF THE ACT BY REFUSING TO ARBITRATE THREE GRIEVANCES THAT AROSE UNDER ITS COLLECTIVE-BARGAINING AGREEMENT WITH SEIU IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

The Board's finding that the Hospital committed an unfair labor practice when it refused to arbitrate three pending grievances with SEIU is supported by substantial evidence in the record and follows logically from and is consistent with Board and court precedent regarding an employer's duty to adhere to its collective-bargaining agreement's arbitration procedures. The Hospital's arguments in opposition misconstrue labor-law principles and the facts of this case.

**A. An Employer's Duty to Arbitrate Grievances That Arise Under a Collective-Bargaining Agreement Is a Longstanding Tenet of Labor Law, and that Duty Survives Union Decertification**

The Supreme Court has long recognized "the central role of arbitration in effectuating national labor policy," *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 549 (1964), and the Board and courts have treated grievance and arbitration provisions of collective-bargaining agreements with great respect. *See, e.g.*, *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960) (describing arbitration of grievances as "[a] major factor in achieving industrial peace"); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960) (describing "[t]he federal policy of settling labor

9

disputes by arbitration").  In reviewing contractual arbitration provisions, courts will not dismiss lightly a party's obligation to arbitrate.  *See AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (discussing the "presumption of arbitrability for labor disputes"); *Warrior & Gulf Navigation Co.*, 363 U.S. at 582-83.

An employer has a duty under the Act to arbitrate grievances that arise under a collective-bargaining agreement that provides for arbitration.  *Indiana & Michigan Elec. Co.*, 284 NLRB 53, 59 (1987); *see also Nolde Bros., Inc. v. Bakery Workers Local 358*, 430 U.S. 243, 252 (1977).  Failure to do so constitutes an unlawful repudiation of the contract and is an unfair labor practice in violation of Section 8(a)(5), which makes it unlawful for an employer "to refuse to bargain collectively with the representatives of his employees."  29 U.S.C. § 158(a)(5); *Indiana & Michigan Elec. Co.*, 284 NLRB at 59.  The duty to arbitrate such grievances remains in effect after the contract that initially provided for arbitration has expired.  *Nolde Bros.*, 430 U.S. at 252; *John Wiley & Sons*, 376 U.S. at 554-55.

An employer must arbitrate such grievances even if the union seeking arbitration has been decertified or otherwise is no longer the employees' collective-bargaining representative.  *Antioch Bldg. Materials Co.*, 316 NLRB 647, 647 n.1 (1995); *Missouri Portland Cement Co.*, 291 NLRB 1043, 1043-44 (1988); *see also UAW Local 1369 v. Telex Computer Prods., Inc.*, 816 F.2d 519, 522-24 (10th Cir.

1987); *U.S. Gypsum Co. v. United Steelworkers of America*, 384 F.2d 38, 44-46 (5th Cir. 1967); *Hosp. Employees, Local 1273 v. Deaton Hosp. & Med. Ctr. of Christ Lutheran Church*, 671 F. Supp. 1049, 1050 (D. Md. 1986).  Thus, an employer violates Section 8(a)(5) and (1) of the Act by refusing to arbitrate a grievance with a decertified union if the grievance arose when the union was still the certified bargaining representative of the employer's workers.  *See Antioch Bldg. Materials*, 316 NLRB at 647 n.1; *Missouri Portland*, 291 NLRB at 1043-44.[2]

By contrast, an employer has no duty to arbitrate grievances with a newly certified union if the grievances arose when its employees were represented by a different union.  *Arizona Portland Cement Co.*, 302 NLRB 36, 36-37 (1991) (finding that an employer's agreement to arbitrate with the old union did not bind it vis-à-vis the new union).  An employer thus can refuse to arbitrate with the new union without violating the Act.  *See id.*

This precedent highlights equitable considerations of fairness and employee rights.  The Board and courts characterize arbitration both as a bargained-for right itself and as a means of pursuing the substantive rights guaranteed in the contract.

---

[2] An employer that violates Section 8(a)(5) also derivatively violates Section 8(a)(1), 29 U.S.C. § 158(a)(1), which makes it unlawful for an employer to "interfere with, restrain, or coerce employees in the exercise of" their Section 7 rights.  *Exxon Chem. Co. v. NLRB*, 386 F.3d 1160, 1164 (D.C. Cir. 2004).  In turn, Section 7 guarantees employees the right "to self-organization, to form, join, or assist labor organizations [and] to bargain collectively through representatives of their own choosing."  29 U.S.C. § 157.

*See Local 888, AFGE (Bayley-Seton Hospital)*, 323 NLRB 717, 721 (1997)

("[T]he removal of a collective-bargaining representative should not result in the

employees' automatic loss of rights—including rights to arbitration of grievances

as provided for in a contractual arbitration clause—that had arisen under the

agreement in question."); *see also Telex Computer Prods.*, 816 F.2d at 523

(contractual arbitration clause provides employees with a "right to redress"); *U.S.

Gypsum*, 384 F.2d at 44-46.  These decisions also avoid a result in which

grievances will not be heard.  *See Bayley-Seton Hosp.*, 323 NLRB at 721 (warning

that "the grievances would simply die" if a decertified union could not compel

arbitration); *Arizona Portland*, 302 NLRB at 36 (explaining that an employer is

"obligated to complete unfinished business" by arbitrating pending grievances with

a decertified union); *Telex Computer Prods.*, 816 F.2d at 524.

### B.      The Board's Finding Is Supported by Substantial Evidence

The Board's finding that the Hospital unlawfully repudiated its contract in

violation of Section 8(a)(5) and (1) of the Act by refusing to arbitrate the three

pending grievances with SEIU is supported by substantial evidence in the record.

As the stipulated facts show and the Hospital does not dispute, the collective-

bargaining agreement between the Hospital and SEIU provided for arbitration of

grievances and the Montoya, Respiratory Therapist, and Brown grievances arose

under that contract.  SEIU filed these grievances, pursued them through the first

12

two steps in the contractual grievance procedure, and requested arbitration.  At the time that it took these actions, SEIU was the employees' certified bargaining representative.

Based on this undisputed evidence, the Board reasonably found that the Hospital had a duty to arbitrate the three pending grievances with SEIU.  (D&O 3-4.)  The Hospital admittedly did not arbitrate these grievances and, therefore, unlawfully repudiated its contract in violation of the Act.  *See Antioch Bldg. Materials*, 316 NLRB at 647 n.1; *Indiana & Michigan Elec. Co.*, 284 NLRB at 59.

### C.     The Board's Finding Is Consistent With Well-Established Principles and Labor Policies

The Board's finding is consistent with and follows from principles set forth in prior Board and court cases regarding the duty to arbitrate grievances.  In contending otherwise, the Hospital misconstrues these principles, ignores facts in the record, and relies upon distinguishable cases.

### 1.     The Board's finding follows logically from precedent and is consistent with the Act's exclusive-representation principle

The Board's finding follows logically from a series of propositions that prior cases establish.  As in *Nolde Brothers*, 430 U.S. at 252, the pending grievances at issue here arose under a contract that provides for arbitration.  *Missouri Portland*, 291 NLRB at 1043-44, and *Antioch Building Materials*, 316 NLRB at 647 n.1, hold that an employer can be compelled to arbitrate such grievances with a union

13

that, like SEIU, is no longer the employees' certified representative, even if that

union has been decertified.  Finally, by holding that an employer can lawfully

refuse to arbitrate pending grievances with a newly certified union like NUHW,

*Arizona Portland* makes clear that the employer must have a duty to arbitrate such

grievances with the decertified union if the grievances are definitely to be heard.

*See* 302 NLRB at 36-37.  The Board reasonably determined that these prior

decisions provide compelling guidance, and it resolved the parties' labor dispute

consistently with that precedent.[3]

Likewise, the Hospital's duty to arbitrate pending grievances with SEIU is

consistent with the Hospital's duty under the Act to bargain only with the newly

certified NUHW.  It is well established that under certain circumstances an

employer must arbitrate with a union that no longer represents a majority of its

employees.  *See Telex Computer Prods.*, 816 F.2d at 522-24; *Antioch Bldg.*

*Materials*, 316 NLRB at 647 n.1; *Missouri Portland*, 291 NLRB at 1043-44; *see*

*also U.S. Gypsum*, 384 F.2d at 44 (rejecting "the bald assertion that the Union,

subsequent to its decertification, has no right to enforce the agreement or any of its

---

[3] Although the Hospital implies otherwise (Br. 16-17), the Board did not ignore the
fact that these cases did not involve the precise factual scenario presented here.
Instead, it looked to these cases as "compelling signals" in determining how to
apply their well-settled principles to a new set of facts (D&O 3-4), a determination
well within the Board's statutory authority.

provisions" through arbitration).  The Hospital's mechanical invocation of the

Act's exclusive-representation principle is thus unwarranted.

Moreover, courts have specifically distinguished arbitration from bargaining

and other traditional representational duties.  In holding that the employer in *John

Wiley & Sons* had to arbitrate pending grievances with a union that no longer

represented a majority of employees, the Supreme Court emphasized that the union

"seeks to arbitrate claims based on [an expired contract], not to negotiate a new

agreement."  376 U.S. at 551 & n.5.  Even when it involves some degree of

contract interpretation, arbitration "is an essentially passive proceeding in and of

itself" in which "[n]o bargaining or other such active employee representation . . .

is involved."  *Telex Computer Prods.*, 816 F.2d at 524.

That same distinction is applicable here.  In pursuing arbitration of the last

remaining grievances, SEIU does not seek to act as the employees' bargaining

representative in the traditional sense.  It does not seek to bargain with the Hospital

over a contract or to set terms and conditions of employment going forward; it

"seeks to arbitrate claims . . ., not to negotiate a new agreement."  *John Wiley &

Sons*, 376 U.S. at 551.  Indeed, SEIU's vestigial role in arbitrating the three

grievances would involve simply "complet[ing] unfinished business" with the

Hospital before exiting the scene.  *Arizona Portland*, 302 NLRB at 36.  Moreover,

as the Board explained (D&O 4), these grievances involve discrete, individualized

15

disputes and have a relatively limited scope—Brown's grievance involves a single

instance of reinstatement, and Montoya's and the respiratory therapists' grievances

involve wages and potential backpay owed to only three employees.

Nor would arbitration necessarily result in negotiations between the Hospital

and SEIU, as the Hospital insists (Br. 23, 27-28). The Board's Order does not

require negotiation or settlement, only that the Hospital "process the grievances to

arbitration." (D&O 4.) The Hospital thus can choose for itself whether to

negotiate or settle the grievances rather than arbitrate. At most, the cases that the

Hospital cites (Br. 27-28) show that arbitration *can* lead to negotiation, not that it

*must*. Moreover, those cases involved settlement negotiations, not contract

negotiations; only the latter would be prohibited under the exclusive-representation

principle if a union is decertified and replaced.[4]

Further, as the Board explained (D&O 4), arbitration of the grievances

would have no prospective effect on conditions of employment that would bind the

Hospital and NUHW in their new bargaining relationship. Any contract

interpretation involved in the arbitrations would apply only to the SEIU contract.

By contrast, the Hospital and NUHW are free to negotiate a new contract, and thus

---

[4] Because the Board's finding that the Hospital had a duty under the Act to
arbitrate the pending grievances with SEIU was supported by substantial evidence
and consistent with precedent, the Hospital's stated concern (Br. 23) that the Board
might find it liable for an unfair labor practice for arbitrating the grievances is
nonsensical. Fulfilling a duty under the Act is not a violation of the Act.

16

can insulate themselves from any arbitral interpretation of the old contract by

negotiating new terms or adopting new language.[5]

The Hospital's reliance on *McGuire v. Humble Oil & Refining Co.*, 355 F.2d

352 (2d Cir. 1966), as support for its contention that arbitrating with SEIU would

constitute impermissible bargaining is misplaced.  Arbitration under the

circumstances in that case would have approximated traditional bargaining in a

way that arbitration with SEIU would not.  Following a sale of the company, the

replaced union in *McGuire* sought to arbitrate 26 grievances with the new

employer that essentially sought to enforce the old contract in its entirety; in

addition to seeking recognition of the replaced union, the wide-ranging grievances

touched on topics such as wages, hours, pensions, job security, and worksite access

for the replaced union.  *Id.* at 355 & n.2.  Unlike those complex and forward-

looking grievances, the reinstatement and backpay grievances that SEIU seeks to

arbitrate are discrete and individualized.

Other cases that the Hospital cites simply do not support its claims.

Contrary to the Hospital's assertion, *Glendale Manufacturing Co. v. Local No.*

*520, ILGWU*, 283 F.2d 936 (4th Cir. 1960), and *Sheet Metal Workers International*

*Association, Local No. 162 v. Jason Manufacturing, Inc.*, 900 F.2d 1392 (9th Cir.

1990), do not "hold[] that an employer cannot arbitrate with a decertified union

---

[5] For the same reasons, any interpretation of the SEIU contract that the Hospital
and SEIU might adopt as part of a settlement would not bind NUHW.

when another union has taken its place" (Br. 22-23). *Glendale Manufacturing* held that an employer could not bargain with a decertified union, 283 F.2d at 937-38, and *Jason Manufacturing* held that an employer could not be party to a collective-bargaining agreement with a decertified union, 900 F.2d at 1395, 1399-1400. Neither case presented the issue of arbitration after decertification, and neither involved a newly certified union. *See Jason Mfg.*, 900 F.2d at 1395; *Glendale Mfg.*, 283 F.2d at 938.[6]

*Children's Hospital*, 2012 WL 4891594, and *Federation of Union Representatives v. Unite Here*, 736 F. Supp. 2d 790 (S.D.N.Y. 2010), are neither binding nor persuasive.[7] As the Board explained (D&O 1 n.1), those decisions failed to analyze or even acknowledge *Arizona Portland*, *Missouri Portland*,

---

[6] The Hospital suggests that *John Wiley & Sons* and *Telex Computer Products* support its position (Br. 22), but the statements that it quotes from those cases are dicta. Indeed, the court in *Telex Computer Products* noted that "no other labor organization has been selected" only to explain that the decertified union must be able to demand arbitration if the grievances were to be heard at all. 816 F.2d at 523-24. As the Board subsequently held in *Arizona Portland*, 302 NLRB at 36-37, no other labor organization would have been able to demand arbitration even if one had been selected.

Likewise, although the Hospital purports to find support for its position in a quote from *Arizona Portland* (Br. 20-21), the Board made clear in *Bayley-Seton Hospital* that this statement was "dictum," 323 NLRB at 721 n.28.

[7] As the Board noted, because the Board was not a party to the case, the Hospital properly did not contend that *Children's Hospital* had preclusive effect in these proceedings. (D&O 1 n.1 (citing *Field Bridge Assocs.*, 306 NLRB 322, 322 (1992), *enforced sub nom. Local 32B-32J SEIU v. NLRB*, 982 F.2d 845 (2d Cir. 1993))); *see also* 18A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4458.1 at 591-94 (2d ed. 2002).

*Antioch Building Materials* or any other Board law.  Given the relevance of these

cases and the Board's status as the agency tasked with crafting federal labor law,

*see UAW*, 455 F.2d at 1364-65, this oversight undermines the decisions'

persuasiveness.[8]  The analysis that those decisions do contain is also flawed.  Like

the Hospital, they mechanically invoke the exclusive-representation principle and

categorically equate arbitration with bargaining.  *See Children's Hosp.*, 2012 WL

4891594, at *3; *Fed'n of Union Representatives*, 736 F. Supp. 2d at 793-96.  For

the reasons detailed above, this approach is unwarranted.[9]

    Moreover, other courts decisions are in line with the Board's finding.  In

*Small v. Frank*, 1996 WL 50658, at *3 (E.D. Pa. Feb. 5, 1996), the court held that

an employer's arbitration of pending grievances with a decertified union rather

than the newly certified one did not constitute an unfair labor practice so as to

---

[8] For example, *Federation of Union Representatives* inaccurately suggests that a newly certified union could demand arbitration, contrary to *Arizona Portland*.  *See Fed'n of Union Representatives*, 736 F. Supp. 2d at 797.

[9] The district court in *Children's Hospital* was concerned with the possibility that compelling arbitration would lead to negotiations over the arbitration proceeding itself, 2012 WL 4891594, at *3, but any such negotiations would be inconsequential; negotiation over matters such as the selection of an arbitrator certainly would have no impact on the new bargaining relationship between the Hospital and NUHW.  The court also questioned whether an arbitrator could tailor an award so as not to require further bargaining or negotiations between the employer and the decertified union, *id.* at *3-5, but this speculative concern is premised on an undue lack of faith in the ability of arbitrators versed in labor law to craft a practical, enforceable award within the bounds of the exclusive-representation principle.

warrant vacating the arbitration award.  Likewise, *U.S. Gypsum* recognized that,
under certain circumstances, an employee seeking to arbitrate "might need the
'old' union as his advocate even if another union was then certified."  384 F.2d at
26 n.24; *accord Quinn v. Police Officers Labor Council*, 572 N.W. 2d 641, 642-44
& n.1 (Mich. 1998) (under Michigan law "patterned after the National Labor
Relations Act," a decertified and replaced union has an obligation to arbitrate
pending grievances with the employer).

> ### 2.    The Board's finding ensures that the three pending grievances will be heard

By ordering the Hospital to arbitrate the three pending grievances with
SEIU, the Board's finding ensures that the grievances will be heard—and is thus
supported by the equitable considerations of employee fairness that underlie earlier
cases.  Because the newly certified NUHW cannot compel the Hospital to arbitrate
these grievances, *see Arizona Portland*, 302 NLRB at 36-37, if the Hospital also
can refuse to arbitrate with SEIU "the grievances would simply die," *Bayley-Seton
Hosp.*, 323 NLRB at 721.  If SEIU cannot compel arbitration of these grievances,
then no one can, and Montoya, Brown, and the respiratory therapists would lose
their "right to redress." *Telex Computer Prods.*, 816 F.2d at 523.

The Hospital attempts to avoid this conclusion, but the alternatives to
arbitration that it suggests are untenable.  The Hospital suggests that grievants
could file a lawsuit under § 301 of the Labor Management Relations Act, but the

employees forced to do so would lose the benefits of the contractual grievance system for which they bargained. Labor arbitrators have comparative expertise and experience in handling such disputes, and arbitration tends to move more quickly and cost less than litigation. *See Nolde Bros.*, 430 U.S. at 253-54.[10] Moreover, the Hospital's suggestion is contrary to longstanding federal labor-law policy that prefers arbitration to litigation. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965) (noting that "Congress has expressly approved contract grievance procedures as a preferred method for settling disputes"). The Hospital's suggestion that grievants file an unfair-labor-practice charge with the Board is unavailing for Montoya or the respiratory therapists; because the disputes underlying their grievances occurred in 2011, the six-month statute-of-limitations period had run by the time the Hospital refused to arbitrate in July 2012. *See* 29 U.S.C. § 160(b).

Moreover, the Hospital misinterprets *Bayley-Seton Hospital*. That case did not hold, as the Hospital contends (Br. 22 n.3), that a decertified and replaced union has no duty to arbitrate pending grievances, but only that the issue was unclear at the time of the union's failure to arbitrate in that case. 323 NLRB at 721. This limited holding has no bearing on the Hospital's obligation. The Board

---

[10] Further, Hospital employees may have forgone something else in order to get an arbitration clause in their collective-bargaining agreement. An arbitration clause is often included in exchange for a no-strike clause, for example, and the contract between the Hospital and SEIU contains such a no-strike clause. (JX 1 at 64.)

21

emphasized that the issue was unclear because it arose prior to the Board's

decision in *Arizona Portland*, *see id*; by contrast, the Hospital had the benefit of

*Arizona Portland* when it refused to arbitrate with SEIU.  Indeed, as explained

above, the Board's finding in this case follows logically from *Arizona Portland*.[11]

### D.    The Hospital's Retroactivity Argument is Jurisdictionally Barred

In its opening brief, the Hospital argues for the first time that the Board's

finding that it had a duty to arbitrate pending grievances with SEIU constitutes a

"new rule" that should not apply retroactively (Br. 30).  Because the Hospital did

not make this argument before the Board (*see* Hosp. Excs. 2), judicial review of the

issue is jurisdictionally barred by Section 10(e) of the Act.  *See* 29 U.S.C. § 160(e)

("No objection that has not been urged before the Board . . . shall be considered by

the court, unless the failure or neglect to urge such objection shall be excused

because of extraordinary circumstances."); *Woelke & Romero Framing, Inc. v.*

*NLRB*, 456 U.S. 645, 665 (1982) (if an issue "was not raised during the

proceedings before the Board, . . . judicial review is barred"); *New York &*

*Presbyterian Hosp. v. NLRB*, 649 F.3d 723, 733 (D.C. Cir. 2011) ("[S]ection 10(e)

---

[11] Further, the issue in *Bayley-Seton Hospital* was whether the union that failed to arbitrate breached its duty of fair representation, 323 NLRB at 721-22, which is analyzed under a different standard than the issue of whether an employer violated Section 8(a)(5) of the Act.  Whether a union violated its duty of fair representation depends upon whether its actions were reasonable and taken in good faith, an inquiry that is informed by the clarity of the law at the time that the union acted. *See id.*  By contrast, the question of whether the Hospital violated Section 8(a)(5) does not contain a reasonableness or a motivation element.

prevents us from considering the argument raised for the first time on appeal."). The Hospital has proffered no extraordinary circumstance that might excuse its failure to raise this issue below.  The retroactivity argument has been forfeited.

In any event, the Hospital's argument, even if properly presented, would be wrong on the merits.  The Board's decision is not a "new rule," and the "critical question" in a retroactivity analysis is "whether the challenged decision 'creates a new rule, either by overruling past precedents relied upon by the parties or because it was an issue of first impression.'"  *UFCW, Local No. 150-A v. NLRB*, 1 F.3d 24, 34 (D.C. Cir. 1993) (quoting *Dist. Lodge 64, Int'l Ass'n of Machinists v. NLRB*, 949 F.2d 441, 447 (D.C. Cir. 1991)).  The Board's decision applied settled principles; it did not depart from or overrule precedent and, as explained above, was not a break from the exclusive-representation principle.  The question of an employer's duty to arbitrate pending grievances after a union has been decertified is hardly a new one, *see Bayley-Seton Hosp.*, 323 NLRB at 721; *Arizona Portland*, 302 NLRB at 36-37; *Antioch Bldg. Materials*, 316 NLRB at 647 n.1; *Missouri Portland*, 291 NLRB at 1043-44, and the Board's answer to this particular iteration of the question was simply an application of "broad statutory standard[s] to the particular facts of the case," *Local 13, Detroit Newspaper Printing*, 598 F.2d at 272.

## CONCLUSION

The Board respectfully requests that the Court deny the Hospital's petition

for review and enforce the Board's Order in full.


/s/ Ruth E. Burdick
RUTH E. BURDICK
*Deputy Assistant General Counsel*

/s/ Joel A. Heller
JOEL A. HELLER
*Attorney*
*National Labor Relations Board*
1099 14th Street NW
Washington, DC 20570
(202) 273-7958
(202) 273-1042


RICHARD F. GRIFFIN, JR.
        *General Counsel*

JENNIFER ABRUZZO
        *Deputy General Counsel*

JOHN H. FERGUSON
        *Associate General Counsel*

LINDA DREEBEN
        *Deputy Associate General Counsel*


NATIONAL LABOR RELATIONS BOARD
July 2014

24

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| CHILDREN'S HOSPITAL AND RESEARCH CENTER OF OAKLAND, INC., d/b/a CHILDREN'S HOSPITAL OF OAKLAND | ) ) ) ) | |
| Petitioner | ) ) | Nos. 14-1032, 14-1064 |
| v. | ) ) | |
| NATIONAL LABOR RELATIONS BOARD | ) ) | Board Case No. |
| Respondent | ) ) | 32-CA-86106 |
| and | ) ) | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WORKERS-WEST | ) ) ) | |
| Intervenor for Respondent | ) | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the Board

certifies that its proof brief contains 5,611 words of proportionally spaced, 14-point

type, and the word-processing system used was Microsoft Word 2007.


s/Linda Dreeben
Linda Dreeben
Deputy Associate General Counsel
National Labor Relations Board
1099 14th Street NW
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 23rd day of July, 2014

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| CHILDREN'S HOSPITAL AND RESEARCH CENTER OF OAKLAND, INC., d/b/a CHILDREN'S HOSPITAL OF OAKLAND | ) ) ) | |
| | ) | |
| Petitioner | ) | Nos. 14-1032, 14-1064 |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL LABOR RELATIONS BOARD | ) | |
| | ) | Board Case No. |
| Respondent | ) | 32-CA-86106 |
| | ) | |
| and | ) | |
| | ) | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WORKERS-WEST | ) ) ) | |
| Intervenor for Respondent | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

I certify the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are a registered user or, if they are not by serving a true and correct copy at the address listed below:

Bonnie Glatzer
Nixon Peabody LLP
One Embarcadero Center
Suite 1800
San Francisco, CA 94111-3600

Kenneth John Nichols
Nixon Peabody LLP
401 9th Street, NW
Suite 900
Washington, DC 20004-2128

David A. Rosenfeld
Bruce Harland
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway
Alameda, CA 94501-6430

s/Linda Dreeben
Linda Dreeben
Deputy Associate General Counsel
National Labor Relations Board
1099 14th Street, NW
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 23rd day of July, 2014